PRESTON STATE BANK, Appellant,

v.

Larry M. JORDAN, Appellee.

No. 2–84–255–CV.

Court of Appeals of Texas,
Fort Worth.

June 27, 1985.

Robert S. Leithiser, Leithiser & Palmer, Fort Worth, for appellant.

Jack R. Lynch, Fort Worth, for appellee.

Before BURDOCK, JOE SPURLOCK, II and HILL, JJ.

## OPINION

BURDOCK, Justice.

Appellant, Preston State Bank, brought suit in the county court at law to collect monies allegedly due to it by the appellee, Larry M. Jordan, under a "bank credit card agreement." Trial was before the Court without a jury. The Court entered a take-nothing judgment against appellant, subsequently filing findings of fact and conclusions of law in support of the judgment. Appellant contends in seven points of error that it successfully established a prima facie case which was unrebutted by appellee and, therefore, the trial court erred in failing to render judgment in favor of appellant.

We affirm the judgment of the trial court.

■ Prior to discussing the specific evidence and points of error involved in this case, we feel a brief explanation of the nature of "bank credit card" cases is in order. The use of bank credit cards as a convenient substitute for cash and to purchase goods and services on credit has exploded over the past two decades. Unfortunately, state and federal law has been slow to offer the courts any assistance in directing how these agreements should be interpreted and enforced. There has even been some dispute over how to categorize such arrangements.[1] Our discussion and holding herein will not apply to two-party credit card arrangements wherein a consumer uses a store's card to purchase goods or services at that establishment. Such accounts with oil companies or department stores involve a direct sale on credit between the merchant and the consumer. *See, e.g., Magnolia Petroleum Co. v. McMillan*, 168 S.W.2d 881 (Tex.Civ.App.—Austin 1943, no writ); *Sears, Roebuck and Company v. Duke*, 441 S.W.2d 521 (Tex. 1969).

■ The "bank credit card", however, is a three-party, three-part agreement between the bank, the consumer and the merchant. The original agreement is between the consumer/card holder and the issuing bank. This agreement usually contains a detailed description of each party's rights, duties and liabilities such as the consumer's agreement to pay the bank for all charges incurred through the use of the card. (For a more complete discussion of card holder agreements, their terms and limitations, see *Landey*, note 1 *supra*).

The second part of this three-party arrangement is between the issuer bank and the merchant. The merchant may be required to keep a minimum balance, to present sales slips to the bank within a certain number of days, and to exercise due care in accepting the card from the consumer. The third agreement is between the consumer and the merchant. Both of these parties naturally benefit from the availability to the consumer of credit, especially in making large purchases.

■ The above-described arrangement obviously brings to mind the letter of credit transaction, and we believe that although there are differences in the two financial arrangements, the letter of credit is most analogous to bank credit card transactions. *See Landey*, footnote 1, *supra*, at 93; 50 Am.Jur.2d "Letters of Credit, and Credit Cards", sec. 38. Texas law holds that letters of credit are governed by ordinary contract law. *Temple-Eastex Inc. v. Addison Bank*, 672 S.W.2d 793, 798 (Tex.1984). We hold, therefore, that many principles of contract law apply to this case.

The evidence of a contract between the parties on appeal is sketchy, at best. Appellant pled that: 1) appellee entered into a written contract with appellant; 2) on the basis of such contract appellant issued a Master Charge card which appellee accepted and used; and 3) appellant advanced or paid money in the sum of $1,439.75 that appellee is obligated to repay pursuant to the contract. Attached to the appellant's

---

1. *See* Davenport, Bank Credit Cards and the Uniform Commercial Code, 85 Banking L.J. 941 (1968); Landey, Consumer-Cardholder Defenses in Tripartite Credit Card Arrangements: A Battleground for the Beleaguered Bank; 88 Commercial L.J. 84 (1983).

petition was an affidavit of a bank employee attesting that an attached document was a business record of the bank, properly made and kept in the bank's regular course of business by persons with personal knowledge of the act, event or condition recorded, and was made at or near the time of the act, event or condition. The document appears to be a statement of an account in the name of Larry M. Jordan showing a balance due of $1,439.75. Virtually all of the blanks in this document are just that—blank. None of the alleged charges are itemized; no transactions are described; no attempt was made to show a breakdown of the balance into previous balances, payments and credits, purchases and adjustments, cash advances or finance charges.

Appellee filed a general and specific denial, contending all lawful offsets and credits had not been made and that he had not made charges in the amount stated by appellant. Appellee filed an affidavit that "each and every allegation contained [in the answer] is true and correct to the best of my belief and knowledge." At trial, appellant introduced into evidence the same bank document and affidavit. Additionally, it introduced what was reputed to be a photocopy of the application of appellee, (Plaintiff's Exhibit No. 1) and a photocopy of a "delinquent work card" for an account in the name of Larry Jordan (Plaintiff's Exhibit No. 2). The only witnesses at trial were appellant's attorney, who testified on the question of attorney's fees, and Michele Stewart, Collections Supervisor for appellant. Her testimony was directed to laying the foundation for the admission into evidence of the three documents described above. She testified that according to the bank documents, the account in the name of Larry Jordan reflected a balance due to the bank of $1,439.75.

Appellant argues in points of error 1–5 that:

### POINT OF ERROR 1

The trial court erred in rendering a take-nothing judgment against appellant, because as a matter of law appellant established an unrebutted prima facie case against appellee and was entitled to judgment;

### POINT OF ERROR 2

The trial court erred in rendering a take-nothing judgment against appellant, because appellant established by a preponderance of the evidence its case against appellee and was entitled to judgment;

### POINT OF ERROR 3

The trial court erred in finding that appellant had not proved appellee's indebtedness to it, Findings of Fact Nos. 6 and 6A;

### POINT OF ERROR 4

The trial court erred in concluding that appellant was not entitled to recover any money judgment from appellee, Conclusion of Law No. 1;

### POINT OF ERROR 5

The trial court erred in finding that plaintiff's agent "only knew there was an account, its name and an amount," Finding of Fact No. 4.

These points all are directed in appellant's brief to the argument that the appellant believed it established a prima facie case and the trial court erred in ordering a take-nothing judgment. We disagree.

Appellant has correctly stated the general rule that in reviewing a trial court's take-nothing judgment, this Court will apply the same standard of review as would be applicable to an instructed verdict in a jury trial. *See Getto v. Gray*, 627 S.W.2d 437, 439 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). This standard requires us to accept as true all evidence favorable to appellant, indulging every intendment in its favor and against the judgment. *See Goodale v. Goodale*, 497 S.W.2d 116, 118 (Tex.Civ.App.—Houston

[1st Dist.] 1973, writ ref'd n.r.e.); *Anglin v. Cisco Mortgage Loan Company,* 135 Tex. 188, 141 S.W.2d 935, 938 (1940). Applying this standard of review to the evidence before us, we hold appellant failed to establish a prima facie case.

It was appellant's burden at trial to establish the existence of the contract and compliance with its provisions. *See Dalton v. George B. Hatley Co., Inc.,* 634 S.W.2d 374, 376 (Tex.App.—Austin 1982, no writ). Appellant failed to introduce the contract between itself and appellee or the terms and conditions thereof. Plaintiff's Exhibit No. 1 is, at best, no more than a credit application form. The exhibit looks like a page torn out of a magazine. The bulk of the document is entitled "Credit Card Application" and contains spaces for the applicant to provide pertinent credit history, employment information and other data. The applicant is instructed to "[i]nitial the cards you want and mail this entire page to: TIMESAVER". We can only speculate that the left hand side of this exhibit contained a list and description of various credit cards. The only one visible (and legible) is for Montgomery Wards and it has not been initialed. The bottom right hand portion of the page also contains boxes the applicant may check to receive subscriptions to various publications such as "TIME" and "Sports Illustrated." There is nothing in the document indicating what credit card was sought, nor through what institution.

The applicant agrees, if the application is accepted, and cards are issued and used, to "pay all charges incurred and I further agree to the terms and conditions accompanying the cards." The address on the application is that of a business called "TIMESAVER" in Kensington, Maryland. There was no evidence of the relationship, if any, between Timesaver and appellant. The "terms and conditions accompanying the cards" would constitute what is generally called a "card holder agreement." Appellee's use of the card would indicate acceptance of the contract offered by the issuing bank. This vague, generic application, Plaintiff's Exhibit No. 1, is *not* such a contract, and it cannot substitute for the bank-cardholder contract.

Quite simply put, appellant failed to produce any evidence of a contract agreement under which appellee was allegedly liable to it. The fact that appellee failed to deny under oath under TEX.R. CIV.P. 93(7) that he had executed the contract, does not excuse appellant from having to prove the terms of the contract. *See Thompson v. Republic Acceptance Corporation,* 388 S.W.2d 404, 405 (1965). Appellant's points of error one through five are overruled.

Appellant's remaining two points of error contend there are no findings which support the judgment and, since the case is fully developed, this Court has authority to reverse and render judgment for appellant. Having found that appellant failed to establish its cause of action, obviously we need not discuss its remaining grounds of error. They are, accordingly, overruled. The trial court judgment is affirmed in all respects.