

NUMBER 13-13-00551-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MARIA I. URIBE,                                                                 Appellant,

v.

PHARIA, L.L.C.,                                                                 Appellee.

## On appeal from the County Court at Law No. 5
## of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Benavides
### Memorandum Opinion by Justice Garza

In this suit to collect a credit card debt, appellant Maria I. Uribe appeals a judgment

following a bench trial in favor of appellee, Pharia, L.L.C. ("Pharia"). By two issues, Uribe

contends: (1) the trial court erred in admitting the affidavit of Pharia's custodian of records, Courtney Dodd ("the Dodd affidavit"), because the affidavit failed to show that Dodd had the requisite personal knowledge; and (2) the evidence offered by Pharia to establish the existence of a valid contract was legally and factually insufficient. Because we hold that the evidence was insufficient to establish the existence of a valid contract, we reverse and render judgment in Uribe's favor.

## I. BACKGROUND

Pharia filed suit against Uribe for breach of contract in justice court in Hidalgo County, Texas on February 22, 2010. The justice court ruled in favor of Pharia, and Uribe appealed to the county court-at-law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.001(a) (West, Westlaw through 2013 3d C.S.).

The bench trial in county court was held on July 10, 2013. Pharia offered into evidence the Dodd affidavit and thirty-two pages of Pharia's general business records. The affidavit stated:

> My name is COURTNEY DODD. I am over 18 years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct, and I am personally acquainted with the facts herein stated:
>
> I am an authorized representative of PHARIA L.L.C., the current owner of, and/or successor to, the obligation for which relief is sought in this action, and I serve as the custodian of the records of PHARIA L. L.C ., and as such I am a qualified witness. In my role as custodian of records, I am familiar with how these records have been prepared and maintained. My responsibilities as Custodian of Business Records for PHARIA L.L.C. include but are not limited to the storage, retrieval and review of general business records kept in the normal course of business. These records include but are not limited to records of bills of sale, account statements, credit card agreements, credit card statements, and other account documents. Such records are stored with the office of PHARIA L.L.C. at the address of 2001 Western Avenue, Suite 430, Seattle, WA 98121. I am familiar with the official electronically stored business records regarding the

2

credit account of MARIA I[.] URIBE, purchased by PHARIA L.L.C., by written Bill of Sale.

Attached to this affidavit are 32 pages of records from PHARIA L.L.C.

These records were received by PHARIA L.L.C. in an electronic format from the previous seller. I personally examined the records. My review of the electronic records shows that the Defendant MARIA I URIBE last made a payment on this account on January 3, 2007 and ceased to make any further payments. Our seller provided the balance at the time of the sale. The records are kept by PHARIA L.L.C. in the regular course of business, and it was within the regular course of business of PHARIA L.L.C. for an employee or representative of PHARIA L.L.C., with knowledge of the act, event, condition, opinion, or diagnosis that was recorded, to make this record or to transmit the information to be included in this record. The record was made at or near the time or reasonably soon after the act, event, condition, opinion, or diagnosis that was recorded. The records attached to this affidavit are the originals or exact duplicates of the originals.

The records I personally examined revealed that the originator of the account sold Defendant's credit card account. All transactions are described in detail in a written Bill of Sale attached to this Affidavit.

Upon receipt of the electronic records for the account of MARIA I[.] URIBE, I examined the records which indicate a total balance owed of $4,285.31. Based on my review of the business records, all payments and offsets have been applied to the account.

Based upon PHARIA L.L.C.'s purchase of Defendant's account, PHARIA L.L.C. owns the account and is attempting to enforce its remedies for breach of the cardholder agreement (the contract for this account). My personal examination of these records revealed Defendant did not pay the amount charged and borrowed which is a violation of the contract. The balance due on the account is the amount of PHARIA L.L.C.'s actual damages for the contract. No other person or entity owns this account. PHARIA L.L.C. had to engage legal counsel to enforce its rights against Defendant under the contract.

The records attached to the affidavit included:

(1) Two pages of a Bank of America cardholder agreement in reduced-size print that

are illegible;

3

(2) an "Affidavit of Indebtedness and Assignment" of Kathryn Halpin, an authorized representative of Unifund CCR Partners ("Unifund"), that attests to the following information stored in Unifund's records:

- Uribe's account originated with Bank of America, N.A., on 09/06/2005;

- Unifund Portfolio A, LLC, an affiliate of Unifund, purchased the account from FIA Card Services, N.A., on 10/28/2008;

- Unifund Portfolio A, LLC subsequently assigned the account to Unifund;

- Unifund transferred the account to Pharia on 05/29/2009;

- At the top of the affidavit, the following last four digits of account numbers are referenced: "5848, a.k.a, 1763, a.k.a., 8651."

- In the body of the affidavit, Halpin states that there is "due and payable" from Uribe, account numbers "6848,[1] a.k.a., 1763, a.k.a., 8651, SSN: xxx-xx-[x]343, the principal amount of $2,789.70 plus interest . . . at the rate of 28.99% per annum."

(3) A "Bill of Sale and Assignment of Loans" assigning FIA Card Services, N.A.'s interest in loans identified in the loan schedule to Unifund Portfolio A, LLC, on October 28, 2008, followed by a printout of electronic information (which is barely legible), noting Uribe's account ending in 5848, with social security number ending in 343, with Uribe's McAllen, Texas address, showing a remaining balance of $2789.70 and a last payment date of 01/03/07;

(4) An "Authorization for Assignment of Accounts from Unifund Portfolio A to Unifund CCR Partners [Unifund]," dated July 6, 2001, authorizing Unifund to sell or transfer certain "receivables," followed by a printout of electronic information noting Uribe's account ending in 5848, with social security number ending in 343, with Uribe's

---

[1] Pharia's petition identifies Uribe's account ending 5848. Because "5848" is listed at the top of the Halpin affidavit and elsewhere in the documents, we assume that "6848" is a typographical error.

McAllen, Texas address, and showing a remaining balance of $2,789.70 and a last payment date of 01/03/07;

(5) A bill of sale, dated May 29, 2009, documenting Unifund's sale of certain accounts to Pharia, followed by a printout of electronic information noting Uribe's account ending in 5848, with social security number ending in 343, with Uribe's McAllen, Texas address, and showing a remaining balance of $2,789.70 and a last payment date of 01/03/07;

(6) a document signed by an assistant secretary of FIA Card Services, N.A. and dated July 20, 2009, noting among other things, that effective October 20, 2006, Bank of America, N.A. merged into FIA Card Services, N.A.;

(7) several statements or notices from Bank of America to Uribe (in Spanish) regarding a "Bank of America Visa Account" ending in 1763, and several pages of what appear to be terms or pages of a card member agreement, also in Spanish;

(8) an August 5, 2009 "demand letter" to Uribe at her McAllen address from Pharia's counsel regarding payment of Uribe's debt on a Bank of America credit card ending in 5848, in the amount of $4,285.31; and

(9) a "Department of Defense Manpower Data Center" status report showing that Uribe was not in military service.

At trial, Uribe's counsel objected to the Dodd affidavit "on the basis that it fails to lay a predicate." Counsel argued to the trial court that there is a "conflict in jurisdictions" regarding what evidence is required when one business seeks to admit records of a second business under the business records exception to the hearsay rule. *See* TEX. R. EVID. 803(6). Counsel recognized one line of cases, adopted by the First and Fourteenth

Courts of Appeals and followed by several other jurisdictions, but argued that the present case is governed by this Court's memorandum opinion in *Abrego v. Harvest Credit Management VII, LLC. See* No. 13-09-00026-CV, 2010 WL 1718953, at *3 (Tex. App.— Corpus Christi Apr. 29, 2010, no pet.) (mem. op.). According to counsel, *Abrego* requires that a party, like Pharia, offering the business records of a second entity must have personal knowledge of the second entity's record-keeping practices. *See id.* Uribe's counsel also objected to the Dodd affidavit on the ground that it contained legal conclusions and hearsay. Counsel further argued that the records attached to the Dodd affidavit contradicted the affidavit itself because the affidavit stated that Dodd knew how the records were prepared, but none of the attached records were prepared by Pharia. The trial court stated that it did not find the Dodd affidavit objectionable, overruled all of counsel's objections, and admitted the affidavit with its attached business records.

The trial court entered judgment awarding $4,285.31, plus pre- and post-judgment interest, court costs, and attorney fees in favor of Pharia. This appeal followed.

## I. ADMISSIBILITY OF EVIDENCE

By her first issue, Uribe argues that the trial court erred in admitting the Dodd affidavit because Dodd had insufficient personal knowledge to authenticate records created by other businesses that held Uribe's debt. In her brief, Uribe acknowledges that "there is a recognized exception to the business records affidavit rule which permits an 'incorporating' business to authenticate the records of another company where there is other evidence offered which provides sufficient indicia of reliability." (citing *Duncan Dev., Inc. v. Haney* and *GT & MC, Inc. v. Texas City Refining, Inc.*)*; see Duncan*, 634 S.W.2d 811, 812–13 (Tex. 1982); *Texas City Refining, Inc.*, 822 S.W.2d 252, 258 (Tex. App.—

6

Houston [1st Dist.] 1991, writ denied).  She notes that, in July 2010, the Houston First Court first applied this exception "to hold that a third party debt collector's employee can authenticate credit card account documents that it purchased despite having no personal knowledge or any other showing of reliability as to the credit card company's record-keeping practices."  *See Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 244–45 (Tex. App.—Houston [1st Dist.] 2010, no pet.).  Uribe also notes that the *Simien* holding and its reasoning have  been adopted by other courts.  *See Dodeka, LLC v. Campos*, 377 S.W.3d 726, 732–33 (Tex. App.—San Antonio 2012, no pet.); *see also Ainsworth v. CACH, LLC*, No. 14-11-00502-CV, 2012 WL 1205525, at *5 (Tex. App.—Houston [14th Dist.] Apr. 10, 2012, no pet.) (mem. op.); *Nice v. Dodeka, LLC*, No. 09-10-00014-CV, 2010 WL 4514174, at **3–4 (Tex. App.—Beaumont Nov. 10, 2010, no pet.) (mem. op.).  In addition to the foregoing, the Austin and Dallas Courts of Appeals have also favorably cited *Simien* and adopted its reasoning.  *See Nat'l Health Res. Corp. v. TBF Fin., LLC*, No. 05-13-00351-CV, 2014 WL 1408084, at *5 (Tex. App.—Dallas March 27, 2014, no pet.) (mem. op.); *Roper v. CitiMortgage, Inc.*, No. 03-11-00887-CV, 2013 WL 6465637, at **12–13 (Tex. App.—Austin Nov. 27, 2013, no pet.) (mem. op.).

Uribe argues that the *Simien* Court misapplied the exception for third-party business records by applying it in the context of a third-party debt collector seeking to authenticate records created by other entities even though the third party lacked personal knowledge of the prior entities' record-keeping practices.  *See Simien*, 321 S.W.3d at 244.  Uribe argued to the trial court—and argues on appeal—that the present case is governed by this Court's holding in *Abrego*, 2010 WL 1718953, at *3.

7

We need not decide whether the Dodd affidavit and attached documents were admissible, however, because, even if we consider them, Pharia's evidence was legally insufficient to prove either the existence of a valid credit-card agreement or its terms. Accordingly, we address Uribe's second issue because it is dispositive. *See* TEX. R. APP. P. 47.1.

## II. SUFFICIENCY OF THE EVIDENCE TO SHOW A VALID CONTRACT

By her second issue, Uribe contends that Pharia failed to present evidence of the contract or any of its terms. Specifically, Uribe argued that the only evidence of a contract offered by Pharia was an illegible cardholder agreement and a few monthly statements that were in Spanish. We agree that this evidence was insufficient.

We construe Uribe's issue as a challenge to the legal sufficiency of the evidence to support Pharia's breach of contract claim.[2] Although Uribe did not raise this issue in the trial court, in a nonjury trial, as occurred here, a party may challenge the legal or factual sufficiency of the evidence for the first time on appeal. TEX. R. APP. P. 33.1(d); *Bass v. Walker*, 99 S.W.3d 877, 883 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Accordingly, we address the issue.

### A. Standard of Review and Applicable Law

In a bench trial in which no findings of fact or conclusions of law are requested by the parties or filed by the trial court, we imply all findings of fact necessary to support the judgment. *See, e.g., BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). When the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency

---

[2] We note that in its brief, Pharia did not address Uribe's sufficiency challenge.

8

in the appropriate appellate court. *Id.* We review the sufficiency of the evidence supporting the findings by applying the same standards that we use in reviewing the legal or factual sufficiency of the evidence supporting jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *see Dittman v. Cerone*, No. 13-11-00196-CV, 2013 WL 5970356, at *3 (Tex. App.—Corpus Christi Oct. 31, 2013, no pet.) (mem. op. on reh'g).

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we credit favorable evidence if a reasonable fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* So long as the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the fact-finder. *Id.* at 822. The trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Id.* at 819. Although we consider the evidence in the light most favorable to the challenged findings, indulging every reasonable inference that supports them, we may not disregard evidence that allows only one inference. *Id.* at 822.

To recover for breach of contract, a plaintiff must show: (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the terms of the contract; and (4) the plaintiff suffered damages as a result of the defendant's breach. *Woodhaven Partners, Ltd. v. Shamoun & Norman, LLP*, 422 S.W.3d 821, 837 (Tex. App.—Dallas 2014, no pet.); *Williams v. Unifund CCR Partners Assignee of Citibank*, 264 S.W.3d 231, 235–36 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *McLaughlin, Inc. v. Northstar Drilling Tech., Inc.*, 138 S.W.3d 24, 27 (Tex. App.—San Antonio 2004, no pet.). Thus, in this case, Pharia had the burden to prove each element

9

of a breach of contract claim at trial. *See Preston State Bank v. Jordan*, 692 S.W.2d 740, 744 (Tex. App.—Fort Worth 1985, no writ) (affirming a take-nothing judgment in a suit to recover a credit card debt when the bank failed to present evidence of the contract between the bank and the credit card holder).

Parties form a binding contract when the following elements are present: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) the execution and delivery of the contract with the intent that it be mutual and binding. *Williams*, 264 S.W.3d at 236. To be enforceable, a contract must be sufficiently certain to enable a court to determine the rights and responsibilities of the parties. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). The material terms of a contract must be agreed upon before a court can enforce the contract; the interest rate is a material term. *Id.*

### B. Discussion

As noted, the only evidence offered by Pharia of a valid contract was two pages reflecting a copy of a Bank of America cardholder agreement in print so small that the copies are rendered illegible. Although the "Affidavit of Indebtedness and Assignment" by Halpin states that the balance due on Uribe's account is "$2,789.70 plus interest per the terms of the agreement between the defendant and the original creditor at the rate of 28.99% per annum," there is no evidence establishing Uribe's specific obligations under the agreement or that Uribe agreed to the interest rate asserted by Halpin. Also, there is no evidence explaining how the $2,789.70 balance stated by Halpin became the $4,285.31 balance claimed by Pharia. The several account statements and several pages of text that appear to be a card member agreement were in Spanish, and Pharia

10

provided no translation of the documents. *See* Tᴇx. R. Eᴠɪᴅ. 1009(a) (providing that English translations of foreign-language documents are admissible in certain circumstances, not applicable here). We conclude that, although there is evidence of a credit-card agreement of some kind, there was no evidence proving the terms of that agreement or Uribe's intent to be bound by a specific agreement. *See Williams*, 264 S.W.3d at 236 (holding evidence was insufficient to establish the terms of a valid contract as a matter of law where creditor failed to produce actual credit-card agreement or any other document that established the agreed terms, including the applicable interest rate or method for determining finance charges); *Tully v. Citibank (S.D.), N.A.*, 173 S.W.3d 212, 216–17 (Tex. App.—Texarkana 2005, no pet.) (holding evidence insufficient to show interest rate charged was agreed on where the only evidence was the rates specified in monthly statements); *Jordan*, 692 S.W.2d at 744 (holding evidence insufficient to establish a contract where creditor failed to introduce contract or its terms and conditions); *see also Hooper v. Generations Cmty. Fed. Credit Union*, No. 04-12-00080-CV, 2013 WL 2645111, at *3 (Tex. App.—San Antonio June 12, 2013, no pet.) (mem. op.) (reversing judgment for creditor where cardholder agreement was not offered into evidence and there was no evidence establishing debtor's specific obligations under an agreement); *Colvin v. Tex. Dow Employees Credit Union*, No. 01-11-00342-CV, 2012 WL 5544950, at *6 (Tex. App.—Houston [1st Dist.] Nov. 15, 2012, no pet.) (mem. op.) (reversing summary judgment for creditor where creditor failed to offer the original agreement, monthly statements, or other evidence establishing how it calculated its alleged damages); *Martin v. Federated Capital Corp.*, No. 01-12-00116-CV, 2012 WL 4857835, at **2–3 (Tex. App.—Houston [1st Dist.] Oct. 11, 2012, no pet.) (mem. op.) (reversing summary

11

judgment for creditor where creditor's evidence failed to explain how it calculated its damages); *Ayers v. Target Nat'l Bank*, No. 14-11-00574-CV, 2012 WL 3043043, at **2–4 (Tex. App.—Houston [14th Dist.] July 26, 2012, no pet.) (mem. op.) (reversing summary judgment for creditor where creditor failed to present cardholder agreement and a portion of the form language on the credit-card application was illegible and form language was in Spanish); *Wande v. Pharia*, No. 01-10-00481-CV, 2011 WL 3820774, at *5 (Tex. App.—Houston [1st Dist.] Aug. 25, 2011, no pet.) (mem. op.) (reversing summary judgment for creditor where creditor presented the cardholder agreement but important portions of the agreement were illegible, including a section entitled "Finance Charges," and creditor presented no evidence regarding the calculations it used to arrive at claimed outstanding balance); *Jaramillo v. Portfolio Acquisitions, LLC*, No. 14-08-00938-CV, 2010 WL 1197669, at **5–6 (Tex. App.—Houston [14th Dist.] March 30, 2010, no pet.) (mem. op.) (holding evidence insufficient to establish a valid contract where card member agreement was entered into evidence, but many of its material terms were missing; "This court and its sister court have drawn a distinction between cases where a card member agreement is entered into evidence and where there is no card member agreement.").

Considering the evidence in the light most favorable to the challenged finding, *see City of Keller*, 168 S.W.3d at 822, we conclude that no reasonable fact-finder could have found the evidence sufficient to establish the existence of a valid contract. *See Williams*, 264 S.W.3d at 236; *T.O. Stanley Boot Co.*, 847 S.W.2d at 221. The evidence was therefore legally insufficient to establish the existence of a valid contract. We sustain Uribe's second issue.

## IV. CONCLUSION

Because we hold the evidence insufficient to establish the existence of a valid contract, we reverse the trial court's judgment and render judgment that Pharia take nothing.

 

_____
DORI CONTRERAS GARZA,
Justice

Delivered and filed the
17th day of July, 2014.