Opinion issued February 28, 2019



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-17-00722-CV

_____

**SHEILA C. KIRK AKA SHEILA MOON AKA CHRISTINE S. ALLEN,
Appellant**

**V.**

**NATIONAL COLLEGIATE STUDENT LOAN TRUST 2003-1, Appellee**

On Appeal from the County Civil Court at Law No. 4
Harris County, Texas
Trial Court Case No. 1087683

## MEMORANDUM OPINION

Appellee National Collegiate Student Loan Trust 2003-1 sued appellant

Shelia Kirk for breach of contract following her failure to make payments on the

student loan that the Trust claimed it was assigned.[1] After a short bench trial, the trial court entered judgment in favor of the Trust. On appeal, Kirk contends that the Trust lacked standing to sue because it failed to prove that it was in fact assigned her loan, that the trial court improperly admitted the Trust's business-records affidavit and the exhibits that accompanied it, that the breach-of-contract evidence was legally and factually insufficient to support the judgment, and that the Trust's pleadings did not support the judgment. We conclude that the Trust did submit evidence of the loan's assignment to it; that the trial court reasonably could have concluded that the business-records affidavit and its exhibits satisfied Rule of Evidence 803(6)'s requirements; that the breach-of-contract evidence was legally and factually sufficient; and that Kirk failed to adequately brief her argument that the Trust's pleadings did not support the judgment. Accordingly, we affirm.

**Background**

In 2003, appellant Shelia Kirk signed a non-negotiable credit agreement to secure a $20,000 student loan from Bank One. The loan was disbursed less than a month later. Bank One later assigned Kirk's loan to appellee National Collegiate Student Loan Trust 2003-1. Kirk defaulted on the loan in 2013, and the Trust demanded payment in full, but Kirk did not comply. The Trust then brought a

---

[1] The trust also sued Merle Kirk, but the record reveals that Merle did not appear in the trial court and that there was no appeal filed on his behalf. Accordingly, any issue pertaining to Merle is not before this court.

breach-of-contract claim against Kirk, seeking $24,028.94 in damages. Kirk answered, generally denied the allegations, and asserted the statute of limitations as her sole defense.

At trial, the Trust offered into evidence the business-records affidavit of Alicia Holiday, the custodian of records at Transworld Systems Inc., the subservicer for the Trust. In her affidavit, Holiday averred:

> 2. TSI has been contracted to perform the duties of the Subservicer for Plaintiff by U.S. Bank, National Association, the Special Servicer of Plaintiff. TSI, as the Subservicer of the [Trust], is the designated custodian of records for [Kirk's] educational loan. Additionally, TSI maintains the dedicated system of record for electronic transactions pertaining to [Kirk's] educational loan, including, but not necessarily limited to, payments, credits, interest accrual and any other transactions that could impact the Defendants' educational loan.
>
> 3. . . . . As an employee of TSI, I am duly authorized by [the Trust] . . . to make representations contained in this Affidavit.
>
> 4. I have access and training on the system of record utilized by TSI to enter and maintain loan account records and documentation concerning [Kirk's] education loan for the [Trust].
>
> 5. I am familiar with the process by which TSI receives prior account records, including origination records from the time the loan was requested and/or disbursed to [Kirk] and/or the student's school on their behalf.
>
> 6. As custodian of records it is TSI's regularly-conducted business practice to incorporate prior loan records and/or documentation into TSI's business records.
>
> 7. I am further competent and authorized to testify regarding this educational loan through personal knowledge of the business records maintained by TSI as custodian of records, including electronic data

3

provided to TSI related to the Defendants' educational loan, and the business records attached to this Affidavit.

8. This lawsuit concerns an unpaid loan owed by [Kirk] to [the Trust]. Specifically, [Kirk] entered into an educational loan agreement at [her] special instance and request. A loan was extended for [Kirk] to use pursuant to the terms of the loan agreements. [Kirk has] failed, refused, and/or neglected to pay the balance pursuant to the agreed terms.

9. Educational loan records are created, compiled and recorded as part of regularly conducted business activity at or near the time of the event and from information transmitted from a person with personal knowledge of said event and a business duty to report it, or from information transmitted by a person with personal knowledge of the accounts or events described within the business record. Such records are created, kept, maintained, and relied upon in the course of ordinary and regularly conducted business activity.

10. I have reviewed the educational loan records described in this affidavit regarding account number xxxxxl080-001-PHEA. No payment has been made since 11/4/2013. After all payments, credits and offsets have been applied, [Kirk] owe[s] the principal sum of $21,867.96, together with accrued interest in the amount of $2,160.98, totaling the sum of $24,028.94 as of 4/12/2017. Attached hereto and incorporated . . . is a true copy of the underlying Credit Agreement/Promissory Note and Note Disclosure Statement. . . .

11. [Kirk] opened an educational loan with [Bank One] and funds were disbursed on 9/25/2003. [Kirk's] educational loan was then transferred, sold and assigned to [the Trust] on 12/11/2003 for valuable consideration, in the course of the securitization process. [Kirk's] educational loan was in good standing and not in default on 12/11/2003. Attached hereto and incorporated . . . is a true and correct copy of the Pool Supplement Agreement. [This document] contains a redacted copy of the Schedule of transferred loans referenced within the Pool Supplement.

Holiday attached exhibits to her affidavit. Exhibit A is a November 3, 2013

letter from U.S. Bank, as special servicer for the Trust, confirming that TSI is the

"dedicated record custodian with respect to all student loan accounts owned by [the Trust]" and is "fully authorized to execute affidavits regarding account documents, verify responses to discovery and provide testimony on behalf of [the Trust]." Exhibit B is a non-negotiable Credit Agreement signed by Kirk and a Note Disclosure Statement. The Credit Agreement, dated September 18, 2003, states that Kirk applied for an education loan of $20,000 from Bank One. The Note Disclosure Statement reflects that a loan amount of $20,000 was disbursed to Kirk, or on her behalf, and that she agreed to make 240 monthly payments of $174.44 beginning on December 15, 2005. Exhibit C contains a Pool Supplement that details Bank One's assignment of loans through an intermediary to the Trust. The Pool Supplement references a schedule that lists the loans assigned to the Trust. Following the Pool Supplement are two pages that lists Kirk's loan. Holiday's affidavit identifies these latter two pages as a redacted version of the exhibit referenced in the Pool Supplement. Exhibit D is a Loan Financial Activity Report that reflects the monthly balance and interest accrued on Kirk's loan and that she did not make any payments. Exhibit E is a document noting that Kirk had no existing loans that would have resulted in her repayment of the loan at issue being deferred. Exhibit F is a document reflecting the repayment schedules associated with Kirk's loan. Exhibit G is a document reflecting a month-to-month breakdown of the interest accrual on Kirk's loan.

5

When the Trust offered into evidence Holiday's affidavit and the attached exhibits, Kirk objected, and the following exchange occurred:

[Kirk]: Okay. Now I want to go to the attached exhibits. You can't tell on these that – where the originator is, where the originator –

The Court: I mean, did you file – did you file an objection to the affidavit? Then I think your time for – I don't think now is the time. No ma'am, I don't think that – I think it has to be brought up at the time. You have to file some type of controverting affidavit. It's been on file.

[Kirk]: Objections to it – I can't make objections at trial?

The Court: No, I don't think so. Show me in the Texas Rules of Civil Procedure where it says you can.

[Kirk]: I was just going to argue *Jenkins*, Your Honor. So, what you're saying –

The Court: I mean, it's been on file since –

Kirk: A dollar short and a day late.

The Court: Well, I don't know. Yeah, I don't know that, you know, it's your doing. But I mean, this has been on file since May 25th, 2017. And I assume you were just recently –

[Kirk]: Right. This is my first appearance.

The Court: Right, right. And I assume that you met -- well, I won't assume that, but I assume that you haven't been on this case since May of 2017.

[Kirk]: I've been on this case since about last Friday.

The Court: Yes, ma'am. And so –

[Kirk]: That's what you're saying.

6

The Court:   Yes, ma'am. I mean, I think that when these are on file, you can controvert it.

After a discussion off the record, the trial court entered a judgment in favor of the Trust on its breach-of-contract claim, and awarded the Trust damages in the amount of $24,028.94, plus interest and costs. Kirk appeals.

## Analysis

Kirk raises four issues. She argues that the Trust lacked standing to sue, the trial court erroneously admitted the Trust's business-records affidavit, the evidence was legally and factually insufficient to sustain the Trust's breach-of-contract claim, and the judgment was not supported by proper pleadings. We overrule each issue.

## I.      The Trust's standing and business-records evidence

Kirk contends that the Trust lacked standing to bring this suit. Plaintiffs must have standing to sue. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). Standing is a component of subject-matter jurisdiction and may therefore be raised for the first time on appeal. *Id.* at 849. The "standing doctrine requires that there be (1) 'a real controversy between the parties' that (2) 'will be actually determined by the judicial declaration sought.'" *Id.* (quoting *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996)). Whether a plaintiff has standing is a legal question that we review de novo. *See Tex. Dep't. of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004).

7

According to Kirk, had the trial court properly excluded the Trust's business-records affidavit and its accompanying exhibits, the Trust would have been incapable of establishing that it was assigned the loan and therefore could not have established its standing to sue. Because Kirk's standing issue encompasses her issue concerning the admission of the business-record affidavit, we address both issues here.

We review a trial court's evidentiary ruling for an abuse of discretion. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion by ruling without reference to guiding rules or principles. *Id.* The trial court overruled Kirk's objection to the business-record affidavit and its attached exhibits after concluding that Kirk waived her evidentiary challenge by failing to file a written objection to the documents before trial began. We agree with Kirk that the trial court's rationale was erroneous. It is possible, as Kirk suggests, that the trial court inadvertently applied a summary-judgment evidentiary rule. *See, e.g.*, *Scott v. Hunt*, No. 01–11–00042–CV, 2012 WL 983339, at *5 (Tex. App.—Houston [1st Dist.] Mar. 22, 2012, no pet.) (mem. op.) ("A party must object in writing and obtain an express or implied ruling from the trial court to preserve a complaint about the form of summary judgment evidence.") (citing TEX. R. CIV. P. 166a(f); TEX. R. APP. P. 33.1(a)(2)(A); *Grand Prairie I.S.D. v. Vaughan*, 792 S.W.2d 944, 945 (Tex. 1990)). But outside the summary-judgment context, we are aware of

8

no rule that requires parties to file written objections to a business-record affidavit before trial. Nevertheless, we "must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling." *Malone*, 972 S.W.2d at 43. Accordingly, we address the merits of Kirk's evidentiary argument.[2]

Certain business records are excepted from the general rule prohibiting the admission of hearsay—out-of-court statements offered to prove the truth of the matter asserted. TEX. R. EVID. 802, 803, 901(d). The business-records exception states that a record of an act, event, condition, or opinion is not excluded as hearsay if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted business activity;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by an affidavit or unsworn declaration that complies with Rule 902(10); and

---

[2] Kirk also maintains that the Trust's business-record affidavit was not actually admitted into evidence. As the Dallas Court of Appeals has noted, "evidence treated by the trial court and the parties as if it had been admitted is, for all practical purposes, admitted." *See Travelers Indem. Co. v. Starkey*, 157 S.W.3d 899, 904 (Tex. App.—Dallas 2005) (collecting cases). Kirk does not dispute that she, the Trust, and the trial court all treated the affidavit as though it had been admitted at trial. We therefore reject Kirk's argument that the business-record affidavit and its attachments were not admitted into evidence.

9

(E) the opponent fails to demonstrate that the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness.

TEX. R. EVID. 803(6). Documents created or authored by third parties are admissible as the business records of another business if: "(a) the document is incorporated and kept in the course of the testifying witness's business; (b) that business typically relies upon the accuracy of the contents of the document; and (c) the circumstances otherwise indicate the trustworthiness of the document." *Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 240–41 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

Holiday, the Trust's business-records affiant, provided sufficient testimony demonstrating that the exhibits attached to her affidavit complied with Rule 803(6). In her affidavit, Holiday averred that TSI is the Trust's loan subservicer and the designated custodian of records for the Kirk loan; that she is employed by TSI and authorized by the Trust to make representations in her affidavit and to testify about the Kirk loan; and that she has personal knowledge of the business records maintained by TSI as the custodian of records, including the business records attached to her affidavit. *See* TEX. R. EVID. 803(6)(D). She stated that the records are created, compiled, and recorded as part of regularly conducted business activity at or near the time of the event and from information transmitted by a person with knowledge of the event and a business duty to report it, or from information transmitted by a person with personal knowledge of the accounts or events described

10

within the business records. *See id.* at (6)(A). She further stated that the records are created, kept, maintained, and relied upon in the course of regularly conducted business activity. *See id.* at (6)(B). And she stated that it is TSI's regularly conducted business practice to incorporate prior loan records and documentation into TSI's business records and that she is familiar with the process by which TSI receives prior account records, including origination records. *See Simien*, 321 S.W.3d at 240–41 (stating circumstances under which document authored or created by third party may be admissible as business record of different business). With these statements, the trial court reasonably could have concluded that Rule 803(6)'s requirements were satisfied. We therefore reject Kirk's contention that the trial court abused its discretion.

Kirk also contends, however, that some of the exhibits attached to Holiday's affidavit were improperly admitted, namely, the heavily redacted schedule referenced by the Pool Supplement and other numerical data exhibits. According to Kirk, these documents failed to qualify as business records because they were untrustworthy. We analyze each of the exhibits separately.

In making her argument that the trial court should have excluded the heavily redacted schedule referenced by the Pool Supplement, Kirk primarily relies on *Jenkins v. CACH, LLC*, No. 14-13-00750-CV, 2014 WL 420518 (Tex. App.— Houston [14th Dist.] 2014, no pet.) (mem. op.). *Jenkins* is inapplicable.

*Jenkins*, similar to this case, involved a breach-of-contract action brought by an alleged assignee of the defendant's credit-card debt. *Id.* at \*1. At trial, the plaintiff offered into evidence a business-record affidavit that was accompanied by exhibits. With those exhibits, the plaintiff sought to prove that the defendant had a debt with Bank of America, that Bank of America assigned the defendant's debt to the plaintiff, and that the defendant defaulted on the debt. The trial court admitted the business-record affidavit and the attachments over the defendant's objections that the proffered evidence did not qualify for the business-records exception, that the documents were unreliable, and that none of the documents showed that the defendant's account was in fact assigned to the plaintiff.

The Fourteenth Court of Appeals reversed the trial court's judgment, concluding that the documents lacked sufficient indicia of trustworthiness and reliability to qualify for admission as business records under Rule 803(6). In reaching this conclusion, the court stressed that the business-records affidavit relied in large part on a separate affidavit created by Bank of America that was allegedly a record of Bank of America's sale of the defendant's debt to the plaintiff. The problem with that affidavit, the court noted, was that it was not actually created "at or near the time of the event" that it purported to record. *Id.* at \*6. Rather, the affidavit was created about a year after the alleged sale occurred and three months before the plaintiff filed its suit. Additionally, the Bank of America affidavit claimed

that the sale of the defendant's debt to the plaintiff took place on November 9, 2011, but the actual Bill of Sale that was also submitted with the defendant's business-record affidavit was dated November 15, 2011. Further, evidence suggested that the Bank of America affidavit was created at plaintiff's request. To the court, these circumstances suggested that the Bank of America affidavit "was created in anticipation of litigation rather than in the course of a regular business activity, which casts doubt on its trustworthiness."

The court then turned to the Bill of Sale, which allegedly documented the sale of the defendant's debt to the plaintiff. Like the Pool Agreement involved in this case, the Bill of Sale noted that the loans transferred were identified in a separate "schedule." The court then stated, "immediately following the Bill of Sale . . . is a heavily redacted document in different typeface that lists the [defendant's] account . . . . However, there is no indication on the redacted document that it was meant to be the loan schedule referenced in the Bill of Sale." In concluding that the Bill of Sale and purported loan schedule were untrustworthy, the court noted "there is no evidence that the [purported loan schedule] was attached to the bill of sale, other than by its proximity to the bill of sale in the loan exhibit. It is not labeled as the loan schedule . . . , and there is no indicator of what the document purports to be." Accordingly, the court held that "there is no legitimate basis upon which the trial court's overruling of [the defendant's] hearsay objections can be supported."

13

Kirk contends that the factual similarities between this case and *Jenkins* demand that we reach the same result. We disagree. Unlike *Jenkins*, Holiday's affidavit explicitly notes that the Pool Agreement "Exhibit contains a redacted copy of the Schedule of transferred loans referenced within the Pool Agreement." Further, and with respect to the assignment of Kirk's loan to the Trust, Kirk has identified no evidence that suggests the Holiday's affidavit relies on or contains documents that were created in anticipation of litigation rather than during the course of regular business. There is no dubious third-party affidavit, nor are there any date discrepancies among the documents. These are material differences between the facts of *Jenkins* and this case that prevent us from concluding that the heavily redacted schedule was improperly admitted.

Kirk maintains that, under *Alphaville Ventures, Inc. v. First Bank*, 429 S.W.3d 150 (Tex. App.—Houston [14th Dist.] 2014, no pet.), the Pool Agreement should have been excluded from evidence. This argument is unavailing. In *Alphaville*, another suit to recover a debt, the Fourteenth Court of Appeals concluded that the plaintiff failed to establish that the defendant's debt was assigned to it. The court reasoned that the documents relied on by the plaintiff as supposedly proving assignment did not contain actual language of a present transfer but instead contemplated a future transfer. Here, in contrast, the Pool Agreement acknowledges that the transfer was completed and that the Trust was assigned the loans identified

14

in the schedule, which included Kirk's loan. We therefore reject Kirk's *Alphaville* argument. Because the trial court reasonably could have concluded that the Trust's business-records affidavit and the exhibits attached to it satisfied Rule 803, we overrule Kirk's argument that the trial court abused its discretion.

Although Kirk raises a number of other arguments challenging the trial court's admission of other exhibits attached to Holiday's affidavit, those arguments are waived. To preserve an issue for review, the complaining party must state a clear and specific objection that enables the trial court to make an informed ruling on the objection and that affords the opposing party an opportunity to remedy the defect, if possible. *McKinney v. Nat'l Union Fire Ins. Co.*, 772 S.W.2d 72, 24 (Tex. 1989); *see also* TEX. R. APP. P. 33.1(a). As mentioned above, Kirk cited *Jenkins* in her objection to the business-records evidence. *Jenkins* did not involve the kinds of challenges that Kirk makes here, such as her objection that the Trust failed to lay a proper predicate for summary records. *Jenkins*, as discussed at length above, concerned documents related to proving that a debt was assigned to another. Kirk's objection lacked the level of clarity and specificity necessary to preserve her challenges that were unrelated to the issue of assignment. *See, e.g.*, *Clark v. Walker-Kurth Lumber Co.*, 689 S.W.2d 275, 281 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd) (holding that objection to personal knowledge of sponsoring witness to assert business-records exception did not preserve appellate issues that invoices were not

15

generated at or near time of transaction and that appellee failed to lay proper predicate for introduction of summary of business records); *see also In re N.C.M.*, 66 S.W.3d 417, 420 (Tex. App.—Tyler 2001, no pet.) (holding that general hearsay objection to business records was insufficient to inform trial court of specific grounds of objection or to preserve error).

Finally, because we conclude that Holiday's affidavit and the accompanying exhibits were properly admitted—including the Pool Agreement and the schedule that follows it, both of which together establish that Kirk's loan was in fact assigned to the Trust—we reject Kirk's argument that the Trust lacked standing to sue because it failed to offer any evidence that it was assigned Kirk's loan.

## II. Legal and factual sufficiency

Kirk next argues that the Trust's evidence was legally and factually insufficient to support the trial court's judgment that she breached the contract between her and the Trust. We presume that the trial court made all fact findings that have support in the record and that are necessary to uphold the ruling. *Moki-Mac River Expeditions v. Drugg*, 221 S.W.2d 569, 574 (Tex. 2007). Evidence is legally insufficient to support a judgment if the record lacks any evidence supporting a vital fact, the law prohibits a factfinder from giving weight to the only evidence offered to prove a vital fact, no more than mere scintilla of evidence supports a vital fact, or the evidence conclusively establishes the opposite of a vital fact. *JBS Carriers, Inc.*

16

*v. Washington*, 564 S.W.3d 830 (Tex. 2018). Evidence is factually insufficient if the evidence supporting the finding is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Under both sufficiency standards, we are mindful that the factfinder is the sole judge of credibility of the evidence and that we may not substitute our judgment for the factfinder's. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

A plaintiff alleging breach of contract must prove that a contract existed, that the contract was performed, that the defendant breached the terms of the contract, and that the defendant's breach caused the plaintiff damages. *Winchek v. Am. Express Travel Related Servs. Co.*, 232 S.W.3d 197, 202 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

Kirk first contends that the Trust failed to prove that a contract existed. To establish the existence of a valid contract, the plaintiff must prove that there was an offer, acceptance of that offer, a meeting of the minds, each party's consent to the terms, and execution of the contract with the intent that it be mutually binding. *Id.* Specifically, Kirk maintains that the Trust failed to present sufficient evidence establishing her acceptance of an offer. However, Rule of Civil Procedure 93(7) states that a party denying that she executed a written instrument must file a verified denial to that effect, otherwise the "instrument shall be received in evidence as fully

proved." Kirk did not file a verified denial that denied her acceptance of the loan at issue, and therefore her acceptance argument is waived. *See, e.g.*, *Brown v. Mesa Distribs., Inc.*, 414 S.W.3d 279, 285–86 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (holding that appellant waived issue on appeal because he failed to comply with Rule 93 by filing a verified denial).

Kirk's failure to file a verified denial does not, however, result in automatic enforcement of the contract; the Trust was still required to prove the terms of that contract. *See, e.g.*, *Preston State Bank v. Jordan*, 692 S.W.2d 740, 744 (Tex. App.—Fort Worth 1985, no pet.) ("The fact that appellee failed to deny under oath under [Rule] 93(7) that he had executed the contract, does not excuse appellant from having to prove the terms of the contract."). And Kirk contends that the Trust presented insufficient evidence to support the amount of damages awarded because there is no evidence of the Trust's calculation of interest on the loan nor is there evidence that the Trust provided Kirk notice of its intent to accelerate the debt or of its actual acceleration of the debt.

The material terms of a contract, such as the interest rate on a loan, must have been agreed upon before a court can enforce a contract. *Williams v. Unifund CCR Partners Assignee of Citibank*, 264 S.W.3d 231, 235–36 (Tex. App.—Houston [1st Dist.] 2009, no pet.). In *Williams*, this court concluded that the plaintiff failed to provide sufficient evidence establishing the specific terms of the contract at issue.

18

*Id.* at 236. The plaintiff did not produce any document "that established the agreed terms, including the applicable interest rate or the method for determining the applicability and amount of finance charges." *Id.* Further, the statements offered by the plaintiff showed that the interest rate significantly varied over time, ranging from 5% to 22.4%; yet, the plaintiff presented no evidence explaining how the interest rate changed or why it changed at all. *Id.*

Here, in contrast, the Trust offered into evidence the Credit Agreement that specifically lays out how interest on Kirk's loan was to be calculated and provides for capitalization of interest during deferment. Further, the Note Disclosure Statement the Trust offered into evidence states that the loan's annual percentage rate is 6.661%. The statement then provides,

> VARIBALE RATE: The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of the loan if the index rate increases. The index is . . . LIBOR Index Adjusted Quarterly – The average of the one-month London Interbank Offered Rates published in the "Money Rates" section of The Wall Street Journal on the first business day of each of the three calendar months immediately preceding the first day of each calendar quarter.

The statement then provides a more thorough explanation of how the interest rate affects the principal balance and even gives an example. Despite this description and the Trust submitting a document listing the loan's financial activity and indicating the amount of interest accrued each month on Kirk's loan, Kirk contends that the evidence is insufficient because the Trust did not provide evidence of what the

19

LIBOR rate was for each month. In *Foster v. National Collegiate Student Loan Trust 2007-4*, No. 01-17-00253-CV, 2018 WL 1095760 at *11 (Tex. App.—Houston [1st Dist.] 2018, no pet.), we rejected an argument identical to Kirk's. We noted that that the appellant "provide[d] no authority for her assertion that the Trust was required to support its claim with calculations supporting each month's interest computation over the life of the loan." *Id.* at *11. The same is true here. Accordingly, we overrule Kirk's argument that the Trust failed to provide legally and factually sufficient evidence indicating how her loan was calculated.

Lastly, Kirk contends that because the Trust did not produce any documents establishing that it notified Kirk that it was accelerating her loan following her failure to maintain the monthly payments, the Trust was entitled to recover past-due payments only and not the full amount. Again, Kirk waived this issue by not filing a verified denial that raised it. *See* TEX. R. CIV. P. 93(12) (stating that party's failure to file verified denial "[t]hat notice and proof of loss or claim for damage has not been given as alleged" results in "notice and proof . . . be[ing] presumed"); *see also Brown*, 414 S.W.3d at 285–86. We therefore reject Kirk's notice-of-acceleration argument.

## III. Judgment

In her last argument, Kirk contends that the judgment was erroneous because it was not supported by proper pleadings. She cites an unpublished decision by an

Ohio court of appeals that reversed a trial court order denying a motion for relief from a default judgment in part because the Ohio court concluded that the plaintiff failed to state a claim upon which relief could be granted. Kirk does not draw an analogy to the Ohio case or otherwise explain how it applies here. This is not a default-judgment case, and this is a Texas court. Kirk's argument that the judgment is not supported by proper pleadings is therefore inadequately briefed. *See* TEX. R. APP. P. 38.1(i). Accordingly, we overrule Kirk's last issue.

**Conclusion**

We affirm the judgment of the trial court.


Richard Hightower
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

21